UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cr-20801-JLK/Becerra

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IRA VERSHAD MCFADDEN,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPRESS PHYSICAL EVIDENCE AND STATEMENTS[1]

This matter is before the Court on Defendant Ira Vershad McFadden's ("Defendant" or "McFadden") Motion to Suppress Physical Evidence and Statements (the "Motion"). ECF No. [24]. The Government responded in opposition ("Response"). ECF No. [29]. An evidentiary hearing was held. ECF No. [35]. Having carefully considered Defendant's Motion, the Government's Response, the testimony of the witnesses, the oral arguments of counsel, and being fully advised in the premises, the undersigned recommends that Defendant' Motion be **DENIED** for the reasons set forth below.

    I.    **BACKGROUND**

Defendant is charged in a one-count Indictment with knowingly possessing a firearm and ammunition in and affecting interstate commerce and foreign commerce, knowing that he had previously been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1). As described in more detail below, after being detained for approximately five hours,

---

[1] On July 29, 2020, the Honorable James Lawrence King, United States District Judge, referred this matter to the undersigned United States Magistrate Judge. ECF No. [25].

Defendant provided law enforcement with a written statement and consented to a search of his phone.

Defendant contends that the Court should suppress the written statement and the photograph obtained from his phone because such evidence was "obtained from him as a result of the unlawful and prolonged detention from which he was not free to leave." ECF No. [24] at 3. Defendant contends that, although he was advised of his *Miranda* rights and consented to the search of his cellphone, "he did so only after being detained in excess of 5 hours based solely on his presence at the residence." *Id.*

In Response, the Government argues that Defendant's Motion to Suppress should be denied because law enforcement had probable cause to arrest Defendant, and Defendant's written statement and consent was voluntarily provided and free from government coercion or intimidation. ECF No. [29].

## II.     FINDINGS OF FACT

At the evidentiary hearing, the Government called two witnesses, Detective Yueneski Arriola ("Detective Arriola") and Detective Jerry Robles (Detective Robles"), who were both subject to direct and cross-examination. Based on the testimony of Detective Arriola and Detective Robles, which the Court finds was credible, the Court finds as follows.

Detective Arriola testified that on September 12, 2019, at approximately 8:00 a.m., Detective Arriola and three other detectives were patrolling an area near the Annie Coleman Apartments. While on foot patrol, Detective Arriola stated that he "witnessed an individual in the courtyard who had an ankle monitor on his leg." In addition, Detective Arriola stated that he observed a "large bulge" in the individual's waistband. As Detective Arriola began to approach the individual—identified as "R.B."—R.B. fled into one of the apartment buildings. Detective

Arriola pursued R.B. into a residence which was leased and occupied by "L.R." Detective Arriola followed R.B. through the rear kitchen door of the residence. Once inside the residence, Detective Arriola encountered Defendant alone inside the kitchen of the residence. R.B. entered the living room of the residence and removed something from his waistband and put it in a hamper.

While in the kitchen, Detective Arriola made several observations. Detective Arriola stated that he observed "narcotics, currency, and an AK-47." Specifically, Detective Arriola observed that there was money on top of the microwave, crack and powder cocaine on top of the table in the kitchen, and an AK-47 near the door. In addition, Detective Arriola recognized Defendant as a prior convicted felon. As a result, Detective Arriola handcuffed Defendant and proceeded to call everyone out of the residence. Approximately eighteen people were called out of the two-floor, four-bedroom apartment.

Once everyone was taken out of the apartment, law enforcement officers conducted a protective sweep of the apartment for their safety and in anticipation of obtaining search warrant for the apartment. Defendant was placed in the shade, he was given water, his handcuffs were taken to the front of his person, and he was permitted to use the bathroom, stretch, and speak to others. While waiting on the issuance of the search warrant, law enforcement officers spoke with multiple individuals that were removed from the apartment. Detective Robles testified that he spoke with L.R. and learned that she and her three children were the only ones named on the lease. In addition, L.R. stated that drug dealers had taken over her apartment. In a written statement to law enforcement at approximately 9:18 a.m., L.R. stated that "I've tried to get these people out of my house, but they won't leave. I have said I don't want the guns or drugs or anything in my house, but they won't listen." ECF No. [33–4]. Detective Robles stated that this statement also helped in their application for the search warrant.

A search warrant was issued at approximately 12:00 p.m. The search warrant took approximately one and a half hours to execute. Pursuant to that warrant, a search of the apartment was conducted, and the AK-47 near the door was recovered and found to be loaded with a magazine. Law enforcement officers also found a firearm in a hamper in the living room and recovered a cell phone that was charging on the kitchen table.

At approximately 1:11 p.m., Defendant was read his *Miranda* rights on scene. At approximately 1:20 p.m., Defendant provided a written statement stating, "[t]hose guns that were found are not licensed towards me but I have seen in [sic] touched the guns before. Haven't held any gun in my possession in the last couple days." ECF No. [33–1] at 2. Defendant also provided a statement describing a gun that was consistent with the firearm found in the residence. Defendant was also provided with a consent form to search his phone. At approximately 1:30 p.m., Defendant signed and returned the consent form, also providing the password to unlock the phone. ECF No. [33–2]. A search of his cellphone revealed a photograph of Defendant holding the same AK-47 as the one identified during the search of the residence.

### III. ANALYSIS

Defendant's Motion seeks to suppress all physical evidence and statements that were obtained from Defendant. Specifically, Defendant seeks to suppress: (1) the photograph depicting him holding a gun, and (2) the written statement that he provided to law enforcement regarding the firearm that was found in L.R.'s residence. Defendant argues that the Court should suppress the evidence because such evidence was "obtained from him as a result of the unlawful and prolonged detention from which he was not free to leave." ECF No. [24] at 3. Defendant contends that, although he was advised of his *Miranda* rights and consented to the search of his cellphone, "he did so only after being detained in excess of 5 hours based solely on his presence at the

residence." *Id.* Defendant contends that the detention was unlawful and, therefore, the evidence obtained should be suppressed.

In Response, the Government argues that Defendant's Motion to Suppress should be denied because law enforcement had Probable Cause to arrest Defendant, and Defendant's written statement and consent was voluntarily provided and free from government coercion or intimidation. ECF No. [29] at 5. The Government contends that "[t]he passage of 5 to 6 hours does not render the consent involuntary *per se*." *Id.*

### i.   Law Enforcement Had Probable Cause to Arrest Defendant.

Defendant's argument that he was unlawfully detained is without merit. As the Government correctly argues, the exigent circumstances leading law enforcement officers into L.R.'s residence, coupled with their plain view of narcotics, was sufficient to justify Defendant's warrantless arrest. Here, law enforcement responded to an exigency—the pursuit of R.B—and, while responding to that exigency, Detective Arriola encountered Defendant alone in the kitchen, where powder and crack cocaine were on the kitchen table. As such, Detective Arriola's "suspicions rose to the level of probable cause when . . . he detected what he knew from his law enforcement experience to be [narcotics]." *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991); *see United States v. Maxi*, 886 F.3d 1318, 1329 (11th Cir. 2018) (finding that a warrantless arrest was supported by probable cause and exigent circumstances where a detective "could see a substantial quantity of drugs behind [defendant] when [defendant] opened the door, and [detective] had received a tip that several guns were also located somewhere in the unit").

The Eleventh Circuit has held that "[t]o justify a warrantless arrest in a suspect's home, the government must show both probable cause and the presence of exigent circumstances." *Maxi*, 886 F.3d at 1329. Exigent circumstances encompass situations such as the hot pursuit of a suspect,

risk of removal or destruction of evidence, and danger to the arresting officers or the public. *Id.* In *Maxi*, defendant was arrested after the detective observed a substantial quantity of drugs behind defendant when defendant opened the door to his unit. *Id.* Given that there was a risk that the evidence the detective observed would be destroyed if the detective left to get an arrest warrant, the Eleventh Circuit held that the detective had "probable cause to believe [defendant] committed a crime, and it was objectively reasonable for them to think exigent circumstances existed to justify their. . . arrest without a warrant." *Id.*

Drawing off the Eleventh Circuit's findings in *Maxi*, the facts presented in the instant case clearly demonstrate that law enforcement had sufficient probable cause to conduct a warrantless arrest of Defendant. Detective Arriola not only observed Defendant beside a table with powder and crack cocaine, Detective Arriola also recognized Defendant as a convicted felon and observed an AK-47 placed near the entry door of the residence. These observations—which provide the basis for probable cause—coupled with the exigency created by R.B., were sufficient to justify a warrantless arrest of Defendant.

      **ii.**    **Defendant's Consent to Search his Cellphone and His Statement Were Voluntary**

Defendant's argument that his consent to search his phone and his subsequent statement were not voluntary lacks merit. As an initial matter, a five or six hour detention does not render Defendant's consent involuntary *per se*. "A consensual search is constitutional if it is voluntary; if it is the product of an 'essentially free and unconstrained choice.'" *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). "Voluntariness is a question of fact based on the totality of the circumstances." *Id*. "[D]etermining whether consent was 'voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis.'" *Id*. Moreover, "[p]olice coercion is a necessary

6

component to finding that a defendant 'involuntarily' waived h[is] right to remain silent." *United States v. Ouedraogo*, 824 Fed. App'x 714, 722 (11th Cir. 2020).

Here, the Court does not find, nor does Defendant allege, that there was any coercion, intimidation, or deception which would render Defendant's consent and/or post-*Miranda* statement involuntary. Instead, Defendant merely contends that Defendant's consent and statement was involuntary given the prolonged detention—lasting five to six hours.

Indeed, the totality of the circumstances indicate that Defendant's consent and subsequent written statement was voluntary. Defendant was detained alongside multiple individuals. Defendant was placed in the shade, he was given water, his handcuffs were brought to the front of his person, and he was permitted to use the bathroom, stretch, and speak to others. Notably, as the record reflects, the length of Defendant's detention was due to length of time that took place from the moment law enforcement commenced the application for the search warrant—which was around 8:30 a.m.—to the time that is was finally issued—which was around 12:00 p.m. Once obtained, the search warrant took approximately one and a half hours to execute. Indeed, Defendant was *Mirandized* at approximately 1:11 p.m. At approximately 1:20 p.m., Defendant provided his written statement, and at approximately 1:30 p.m., Defendant provided his written consent to search his phone. As such, Defendant was merely interrogated for approximately ten to thirty minutes, during which time Defendant drafted a written statement within ten minutes and then completed and signed a consent to search form within thirty minutes. *See Shriner v. Wainwright*, 715 F.2d 1452, 1455 (11th Cir.1983) (where a 10-hour detention did not render defendant's confession involuntary); *see also United States v. Arango-Correa*, 851 F.2d 54, 56–57 (2d Cir. 1988) (holding that a five hour detention did not render defendant's consent to search involuntary, even where he was strip searched, complained of stomach pain, and was sleepy).

Notably, the length of detention was a reasonable consequence of law enforcement's pursuit of its investigation. The Supreme Court has explained, that in "assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Here, law enforcement entered a residence and discovered narcotics, eighteen individuals, and multiple firearms. In addition, law enforcement conducted a protective sweep and applied for and executed a search warrant on the residence. Clearly, detaining Defendant for such period of time was a reasonable consequence under the circumstances.

In sum, the Court finds that law enforcement had probable cause to arrest Defendant and the length of the detention was reasonable. Finding insufficient evidence to indicate that Defendant's consent to search and subsequent statement were involuntary, the Court recommends that Defendant's Motion should be denied.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned hereby **RECOMMENDS** that Defendant's Motion to Suppress, ECF No. [24], be DENIED.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on June 9, 2021.

_____
JACQUELINE BECERRA
United States Magistrate Judge